**Denise SNOW and Lee Snow, Appellants,**

v.

**CAPITOL TERRACE, INC., et al., Appellees.**

**CAPITOL TERRACE, INC., et al., Appellants,**

v.

**Denise SNOW and Lee Snow, Appellees.**

**Nos. 90–539, 90–569.**

District of Columbia Court of Appeals.

Argued Nov. 5, 1991.
Decided Jan. 9, 1992.

Robert L. Bell, with whom Dalton J. Howard was on the brief, for appellants/cross-appellees.

Solomon Kendrick, pro se.

Solomon Kendrick, for appellees/cross appellants.

Before ROGERS, Chief Judge, and STEADMAN and SCHWELB, Associate Judges.

ROGERS, Chief Judge:

Appellant/cross-appellee Denise Snow sued her landlord, appellees/cross appellants Capitol Terrace, Inc., and Solomon Kendrick, for damages arising from injuries suffered when a section of ceiling fell on Mrs. Snow as she sat in the bedroom of her apartment.[1] On appeal, Mrs. Snow maintains that the trial judge erred by directing a verdict on the issue of Mr. Kendrick's individual liability for her injuries, and that the judge abused her discretion by refusing to submit the claim for punitive damages to the jury. In a cross appeal, appellees claim that the judge erred by denying Capitol Terrace's motions for a directed verdict on the issues of negligence, contributory negligence and permanency of Mrs. Snow's injuries, and for judgment notwithstanding the verdict or remititur; they

also contend that the trial judge erred by instructing the jury on conflict between experts' opinions when there was none. Appellees further claim that this court is without jurisdiction to hear Mrs. Snow's appeal because it was untimely filed.

We hold that the appeal was timely since the trial judge found excusable neglect, D.C.App.R. 4(a)(4), and we find no clear abuse of discretion by the trial judge. We also hold that the trial judge erred by granting a directed verdict on the issue of Mr. Kendrick's individual liability, and we therefore remand the case for trial on his individual liability. We find no error by the trial judge regarding the punitive damages claim. Finally, we dismiss the cross appeal as untimely.

I

Denise and Lee Snow and their children lived in an apartment at 4079 Minnesota Avenue, N.E., in a building owned by Capitol Terrace, Inc. Mrs. Snow testified that Solomon Kendrick was her landlord and a corporate officer of Capitol Terrace, Inc.,[2] and that she had an oral lease with them since 1978. In 1982, after the Snows complained to Mr. Kendrick on several occasions that the ceiling of their apartment was in disrepair, Mr. Kendrick entered the apartment and pulled down approximately one half of the damaged ceiling in the bedroom. Thereafter, the Snows' repeated requests to agents of Capitol Terrace, Inc. to repair the ceiling came to naught. On August 19, 1984, while Mrs. Snow was pregnant, the remaining portion of ceiling fell on Mrs. Snow and injured her, causing a series of continuing symptoms as a result. At the close of the plaintiffs' case, the trial judge granted Mr. Kendrick's motion for a directed verdict on the issue of his personal liability, ruling that Mrs. Snow had failed to show that he could be held

---

1. Mr. and Mrs. Snow filed a motion to amend the complaint filed by Mrs. Snow to add Mr. Snow as a plaintiff on the claim for breach of the implied warranty of habitability. The motion was granted. Subsequently, however, appellees' motion for a directed verdict on the breach of implied warranty claim was granted. Thus, the judgment entered for Mr. and Mrs. Snow was in error and should have been en-

tered in Mrs. Snow's name alone. We refer in this opinion to appellants as Mrs. Snow.

2. Mr. Kendrick is President of Capitol Terrace, Inc. He is also a director and shareholder of the corporation, as well as its attorney-in-fact. Capitol Terrace, Inc. is a family corporation.

individually liable for her injuries. The jury thereafter returned a verdict in the amount of $50,000.00 against Capitol Terrace, Inc. When Mrs. Snow attempted to execute the judgment, however, she discovered that title to the apartment complex in which the Snows lived had been transferred from Capitol Terrace, Inc. to Mr. Kendrick and his wife, and that there were no funds in the corporation's bank account to pay the judgment.

## II

We address first the challenge to the jurisdiction of the court to hear Mrs. Snow's appeal. Mr. Kendrick maintains that the trial judge abused her discretion by granting Mrs. Snows' motion for leave to extend the time in which to file a notice of appeal, D.C.App.R. 4(a)(4), because the circumstances relied on by Mrs. Snow affected only the execution on the judgment and her disappointed expectations about the corporation's assets. Thus, he contends, the appeal is untimely.

■ Under D.C.App.R. 4(a)(1) an appeal must be filed "within thirty days after entry of the judgment or order from which the appeal is taken." *See In the Matter of C.I.T. & C.M.T.*, 369 A.2d 171, 172–73 (D.C. 1977). The time to appeal is tolled, however, by the filing of a motion:

> For judgment notwithstanding the verdict; to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; to vacate, alter, or amend the order or judgment; for new trial; for reconsideration if authorized by the rules of the Superior Court; and any other motion seeking relief in the nature of the foregoing.

D.C.App.R. 4(a)(2). Furthermore, a late appeal is permitted for excusable neglect. D.C.App.R. 4(a)(4) provides:

> Upon a showing of excusable neglect, the Superior Court may extend the time for filing the notice of appeal by any party for a period not to exceed thirty

days from the expiration of time otherwise prescribed by paragraph (1). Such an extension may be granted before or after the time otherwise prescribed by paragraph (1) has expired; but, if a request for an extension is made after such time has expired, it shall be made by motion with such notice as the court shall deem appropriate.

This court will not reverse a finding of excusable neglect absent a "clear abuse of discretion." *Trezevant v. Trezevant*, 403 A.2d 1134, 1137 (D.C.1979) (citing *Gooch v. Skelly Oil Co.*, 493 F.2d 366, 368 (10th Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 270 (1974)).[3]

The judgment for the Snows was filed on October 19, 1989, and docketed on October 25, 1989. On October 30, 1989, Capitol Terrace, Inc. filed a motion for judgment notwithstanding the verdict or remititur. Following receipt of an opposition and a supplemental memorandum in support of the motion and a further opposition, the trial judge denied the motion on January 31, 1990 (docketed February 2, 1990).

On February 16, 1990, Mrs. Snow filed proof of a recording of a judgment, and oral examination followed on March 22, 1990. Mrs. Snow also filed, the following day, a writ of attachment for other than wages to the Manager of First American Bank, and another writ on March 30, 1990, following a response of 'no funds' by First American Bank, which was filed March 28, 1990.

On April 3, 1990, Mrs. Snow filed a motion for leave to extend the time in which to file a notice of appeal on the grounds of "the extraordinary factual situation and 'unique circumstances.'" A notice of appeal was attached to the motion. Capitol Terrace, Inc. filed an opposition. The trial judge granted the motion on April 27, 1990, giving Mrs. Snow until May 15, 1990, to note an appeal. She did so on May 9, 1990.

Thus, it is clear that Mrs. Snow filed her motion for additional time to file an appeal long after the judgment had been entered. The time to appeal was tolled, however, by

---

**3.** *Gooch* construed the applicable federal rule, but FED.R.APP.P. 4(a) may be construed in *pari materia* with D.C.App.R. 4(a)(4). *Trezevant v. Trezevant, supra,* 403 A.2d at 1136 n. 1.

Capitol Terrace's motion for judgment notwithstanding the verdict which was not acted on by the trial judge until January 31, 1990. Therefore, since the order of denial was docketed on February 2, 1990, Mrs. Snow had until March 12, 1990, to file her appeal. D.C.App.R. 4(a)(2) & (3).[4] The question, thus, is whether the trial judge clearly abused her discretion by granting the motion to extend the time to appeal to May 15, 1990.[5]

■ "Excusable neglect" under Rule 4(a)(4) has been flexibly, but strictly, interpreted to apply to "unique or extraordinary" circumstances, as opposed to "run of the mill" situations where counsel has failed to receive a final order from a court clerk or co-counsel have failed to communicate. *See Pryor v. Pryor*, 343 A.2d 321, 322–23 (D.C.1975) (per curiam) (citing *Files v. City of Rockford*, 440 F.2d 811, 814–15 (7th Cir.1971) (discussing "unique circumstances," based on estoppel theory) and *Gooch v. Skelly Oil Co.*, 493 F.2d at 369 ("common sense meaning of the two simple words [excusable neglect] [are to be] applied to the facts which are developed")); *id.* at 369–70 (cases discussed, citing FED. R.CIV.P. 77(d)); *Davis v. Page*, 618 F.2d 374, 378 (5th Cir.1980), *reh'g* 640 F.2d 599, (5th Cir.1981), *judgment vacated on other grounds* 458 U.S. 1118, 102 S.Ct. 3504, 73 L.Ed.2d 1380, *cert. denied*, 464 U.S. 1052, 104 S.Ct. 735, 79 L.Ed.2d 194 (1984). *See also Insurance Co. of North America v.*

*Bay*, 784 F.2d 869 (8th Cir.1986) (unique circumstances may justify untimely appeal). Mrs. Snow contends that the fact that she, the trial judge, and the jury were led to believe during the trial and afterwards that the apartment complex was owned by Capitol Terrace, Inc., constitutes a unique circumstance sufficient to show excusable neglect.

■ The trial judge granted Mr. Kendrick's motion for a directed verdict on the issue of his personal liability based on the absence of evidence that he owned the apartment complex. Appellees stated before and during the trial that Capitol Terrace, Inc. had owned the property since June, 1982. In fact, however, title to the apartment complex had been transferred from Capitol Terrace, Inc. to Mr. Kendrick and his wife on October 18, 1989, as evidenced by a deed dated October 18, 1989, that was executed "in strict conformity with a resolution of the Board of Directors ... passed at a duly called meeting ... the 17th of October, 1989." In other words, the apartment complex was transferred to Mr. and Mrs. Kendrick immediately after the trial judge had granted the directed verdict on October 17, 1989 [Tr. 73], which had absolved Mr. Kendrick of individual liability for any injuries suffered by the Snows. The Snows first learned of the conveyance in March 1990. At that time, on March 26, 1990, appellees' counsel stat-

**4.** Because the order denying the motion for judgment notwithstanding the verdict was entered outside of the presence of the parties and counsel, an additional five days (excluding Saturdays, Sundays and holidays) for mailing is added, extending the date from which the 30 days to appeal starts to run. *See* D.C.App.R. 4(a)(3); *Singer v. Singer*, 583 A.2d 689 (D.C. 1990) (applying D.C.App.R. 26(a) (computation and extension of time)). Thus, the 30 day period did not start to run until February 9, 1990. The thirtieth day after February 9, 1990, was Sunday, March 11, 1990. Because March 11, 1990, was a Sunday, appellant, therefore, had until Monday, March 12, 1990, to file an appeal. D.C.App.R. 26(a). With the extension that she sought for excusable neglect, she had until April 11, 1990, under D.C.App.R. 4(a)(4), to file a notice of appeal.

**5.** The trial judge's procedure was not strictly correct. D.C.App.R. 4(a)(4) permits an exten-

sion of time to appeal "for a period not to exceed thirty days from the expiration of the time otherwise prescribed...." Thus, the time within which to appeal cannot exceed 60 days under Rule 4(a)(4). The trial court's order, entered after the 60 day period, was effective to allow a timely appeal *nunc pro tunc*, however, since appellant's motion for an extension of time was accompanied by a notice of appeal. *See Reed v. People of the State of Michigan*, 398 F.2d 800 (6th Cir.1969); *C–Thru Products, Inc. v. Uniflex, Inc.*, 397 F.2d 952 (2d Cir.1968). We need not decide the effect of a failure to include a notice of appeal with the motion to extend the time to appeal. *Compare Selph v. Los Angeles*, 593 F.2d 881 (9th Cir.1979), *and Dyotherm Corp. v. Turbo Machine Co.*, 434 F.2d 65 (3d Cir.1970) *with Pasquale v. Finch*, 418 F.2d 627 (1st Cir. 1969). *See also United States v. Jackson*, 528 A.2d 1211, 1214 & n. 8 (D.C.1987) and cases cited.

ed that the property remained "accessible to the extent that there are any assets directly for the purposes of collection" on the judgment entered against the corporation, and further that "local law would establish that any transfer would be void as against a creditor who obtains a judgment." [6] Mrs. Snow maintains that, as a result of the October 18 transfer, she was deprived of her right to make an informed decision about whether to appeal the judgment. The trial judge apparently agreed, although she did not state her reasons, since she granted the motion to extend the time to appeal on the ground of excusable neglect. We find no clear abuse of discretion by the trial judge.

The docket entries and the attachments to Mrs. Snow's motion for an extension of time to appeal support the assertions in her brief that Mr. Kendrick's "secret" transfer of title to the property of Capitol Terrace, Inc. to himself and his wife as individuals prevented Mrs. Snow from making a fully informed determination whether she would appeal. After obtaining a judgment, and after the trial judge had denied the corporation's motion for judgment notwithstanding verdict or remittitur, Mrs. Snow promptly proceeded to try to collect the judgment from Capitol Terrace, Inc. But as late as the start of the March 26, 1990, oral hearing to discover assets, Mr. Kendrick had not admitted that ownership of the apartment complex had been transferred from the corporation, and Mrs. Snow therefore sought, unsuccessfully as it turned out, to satisfy the judgment from the corporation's bank account. If the corporation had ceased to own the apartment complex before the date that Mrs. Snow obtained a judgment, then her interest in appealing the directed verdict on the issue of Mr. Kendrick's personal liability is readily apparent. The record indicates that the sole property of the corporation was the apartment complex and the rents generated from it. Thus, Mr. Kendrick's contention

that the trial judge abused her discretion by granting Mrs. Snow additional time to appeal since Mrs. Snow had simply overestimated the corporate assets available to satisfy the judgment has a hollow ring.

■ The trial, as well as the proceedings thereafter, proceeded on the basis of Mr. Kendrick's claim that he did not own the apartment complex. When the secret conveyance of the complex from the corporation was finally acknowledged by Mr. Kendrick in late March, 1990, his counsel stated that the conveyance could not be used to defeat Mrs. Snow's ability to collect her judgment. In fact, it has. Therefore, having frustrated Mrs. Snow's ability to collect the judgment by means of a secret, midtrial conveyance of the corporation's assets, Mr. Kendrick is estopped from claiming that her late appeal was due simply to disappointed expectations. *Cf. Frain v. District of Columbia,* 572 A.2d 447, 450–51 (D.C.1990); *see also Property 10–F, Inc. v. Pack & Process,* 265 A.2d 290, 291 (D.C. 1970) (statute of limitations); *McCloskey & Co. v. Dickinson,* 56 A.2d 442, 444–45 (D.C. 1948) (same); *Spellman v. American Security Bank,* 504 A.2d 1119, 1123–24 (D.C. 1986) (per curiam). Accordingly, under these extraordinary circumstances, the judge could properly conclude that Mrs. Snow's failure to file a notice of appeal within thirty days after the entry of judgment, D.C.App.R. 4(a)(1), was excusable neglect.

### III

On the merits, Mrs. Snow contends that the trial judge erred by granting a directed verdict to Mr. Kendrick on his individual liability for the damages that she suffered. She maintains that as a corporate officer of Capitol Terrace Inc., Mr. Kendrick is subject to being held personally liable for tortious conduct or acts which he commits, participates in, or inspires, even when the

---

6. Appellees' counsel further stated to the trial court (now Judge Webber) that "we have already agreed to do so [*i.e.,* void the deed]." Counsel for Mrs. Snow represented at oral argument in this court, and Mr. Kendrick conceded, that the judgment remains unsatisfied. In any

event, neither the mere possibility of alternative relief apart from an appeal nor the added potential relief raised by the issues to be appealed precluded the trial judge's exercise of discretion to grant the late appeal in view of Mr. Kendrick's actions.

acts are performed in the name of the corporation. Therefore, in view of the evidence that she presented, Mrs. Snow claims that it was error to direct the verdict in his favor.[7] We agree.

The trial judge was of the view that because there had been no showing that Mr. Kendrick owned the apartment complex or that his actions in pulling down the ceiling and failing to do more afterwards were separate and apart from his activities on behalf of the corporation, he could not be held personally liable for Mrs. Snow's injuries. This is not the law. In general, as long recognized in this jurisdiction, "corporate officers are personally liable for torts which they commit, participate in, or inspire, even though the acts are performed in the name of the corporation." *Vuitch v. Furr*, 482 A.2d 811, 821 (D.C. 1984); *Bethesda Salvage Co. v. Fireman's Fund Ins. Co.*, 111 A.2d 472, 474 (D.C. 1955) ("corporate officers are liable for their torts, although committed when acting officially"). *See also Cafritz v. Corp. Audit Co.*, 60 F.Supp. 627, 633 (D.D.C. 1945) ("[e]xecutive officers of a corporation are personally chargeable with acts of a corporation if they knowingly caused the corporate acts"). Sufficient participation can exist when there is an act or omission by the officer which logically leads to the inference that he or she had a share in the wrongful acts of the corporation which constitute the offense. *Vuitch v. Furr, supra*, 482 A.2d at 821, (citing *Dwyer v. Lanan and Snow Lumber Co.*, 141 Cal. App.2d 838, 297 P.2d 490 (3d Dist.1956)).

Furthermore, the Snows presented evidence that they had a lease with both Capitol Terrace and Mr. Kendrick at the time the ceiling fell on Mrs. Snow, that Mr. Kendrick was a corporate officer of Capitol Terrace, and that he personally had removed a large portion of the bedroom ceil-

ing in the Snows' apartment, and thereafter had left the remaining portion of the ceiling in a dangerous condition for two years despite the Snows' repeated requests to him and to agents of Capitol Terrace that the ceiling be repaired. Viewed in the light most favorable to Mrs. Snow, there was evidence from which a reasonable jury could reasonably find that Mr. Kendrick was personally liable for her injuries. Thus, the trial judge erred by granting the directed verdict to Mr. Kendrick. Because Mr. Kendrick was dismissed from the case before he had the opportunity to put on a defense, however, a remand is required in order to afford him an opportunity to defend against his personal liability.

Regarding Mrs. Snow's contention that the trial judge erred by granting Capitol Terrace's motion for directed verdict on the imposition of punitive damages, we find no error by the trial judge. *See Diamond Service Co. v. Utica Mut. Ins. Co.*, 476 A.2d 648, 652 (D.C.1984) (viewing evidence in light most favorable to nonmoving party, "a verdict may be directed only when the evidence is so clear that reasonable men [and women] could reach but one conclusion"). Punitive damages may be assessed against a corporation if (1) the act of the corporate employee was intentional, malicious or willful, and (2) the corporation through its officers or directors participated in the doing of the wrongful act or authorized or subsequently ratified the offending conduct with full knowledge of the facts. *Woodard v. City Stores Company*, 334 A.2d 189, 191 (D.C.1975). The trial judge found that Mrs. Snow had failed to introduce evidence to show "any hostilities, no malicious relation or hostile relations between the corporation and [Mrs. Snow], or the corporation's agents and [Mrs. Snow]," such as is required to award punitive damages.[8] The record indicates that

---

7. *See Corley v. B.P. Oil Corp.*, 402 A.2d 1258, 1263 (D.C.1979) (verdict properly directed only when the evidence is so clear that reasonable jury could reach but one conclusion); *Marshall v. District of Columbia*, 391 A.2d 1374, 1379 (D.C.1978) (in considering motion for directed verdict, trial court must view the evidence most favorably to the party against whom the motion

is made, and give that party the benefit of all reasonable inferences from the evidence).

8. In addition, the judge found insufficient evidence of Capitol Terrace, Inc.'s net worth to allow the question of punitive damages to go to the jury. *See* Civil Jury Instruction for the District of Columbia 16–3 (3d ed. 1978).

after the Snows left their damaged apartment in 1987, they stayed briefly in a shelter, and then, with the permission of Mr. Kendrick, returned to another apartment in the Capitol Terrace complex. Hence, the trial judge could properly conclude that relations between the Snows and Capitol Terrace, Inc. were not hostile even after Mrs. Snow was injured by the falling ceiling, and therefore, that punitive damages would be unavailable.

## IV

D.C.App. 4(a)(1) provides that a cross appeal may be filed by a party to the proceeding in the trial court "within fourteen days of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this paragraph." The corporation's cross appeal was filed on May 24, 1990, 15 days after Ms. Snow's appeal was filed on May 9, 1990. Therefore, it was untimely, and accordingly it is dismissed.[9]

Accordingly, we affirm the judgment in all respects except for the directed verdict on the issue of Mr. Kendrick's individual liability; we remand the case to the trial court for further proceedings on that issue. We dismiss the cross appeal.

---

**9.** There is another problem with the cross appeal. D.C.App.R. 47(c) provides for the appearance of counsel and limits a *pro se* party to representing himself or herself. Thus, Mr. Kendrick, appearing *pro se,* could not appear on behalf of Capitol Terrace, Inc. The benefits of corporate status—among them being the limitation on individual liability—are accompanied by certain burdens, one of which is that a corporation must appear through counsel. *See Shamey v. Hickey,* 433 A.2d 1111, 1113 (D.C.1981) (plaintiff "chose to accept the advantages of incorporation and must now bear the burdens of that incorporation; thus, he must have an attorney present the corporation's legal claims") (quoting *Mercu–Ray Industries, Inc. v. Bristol–Meyers Co.,* 392 F.Supp. 16, 20 (S.D.N.Y.) *aff'd,* 508 F.2d 837

(2d Cir.1974)); *cf. Atlantic Petroleum v. Jackson Oil,* 572 A.2d 469, 471 & n. 4 (D.C.1990) (Super.Ct.Civ.R. 101(a)(2)). *But see* Super.Ct.Civ.R. 9(b) (Small Claims Branch, exception where corporate defendant). The record shows that Mr. Kendrick sought the protection of corporate status for the apartment complex in 1978. Mr. Kendrick has not suggested that he is a member of the Bar of this court. Since no attorney has entered an appearance in this court on behalf of Capitol Terrace, Inc., its contentions in the cross appeal are not properly before us. So too, the contentions of Mr. Kendrick as a purported cross appellant are not properly before us since the judgment was entered against the corporation only.