**Edward R. CAMACHO, Appellant,**

v.

**1440 RHODE ISLAND AVENUE CORPORATION and Arven Plumley, Appellees.**

**No. 90–CV–659.**

District of Columbia Court of Appeals.

Argued Oct. 1, 1992.
Decided Feb. 9, 1993.

**244**

Ann Mack, Student Atty., Community Legal Clinics, argued for appellant. Deborah S. Barthel Caplan, Supervising Atty., and Tod Cohen (No. 6213) and Sandra M. Ng (No. 6215), Student Attys., Community Legal Clinics, appointed by this court, filed a brief, for appellant.

Dennis R. Carluzzo, for appellees.

Before STEADMAN and SULLIVAN, Associate Judges, and BELSON, Senior Judge.

1. The Hawthorne Hotel was sold by the 1440 Rhode Island Avenue Corporation in 1986, soon after the events described herein.

2. The trial court found that the corporate appellee was not liable for conversion, because the evidence did not indicate that the corporate appellee deliberately deprived appellant of his possessions.

3. We find no merit in appellant's two other contentions. The trial court permissibly considered the hardier aspects of appellant's personali-

STEADMAN, Associate Judge:

This appeal arises out of the eviction of appellant from the Hawthorne Hotel. The hotel was owned by the corporate appellee, 1440 Rhode Island Avenue Corporation.[1] The individual appellee, Arven Plumley, was president and chief operating officer of the corporation, a director, and a fifty percent shareholder. At a bench trial, appellant sought compensatory and punitive damages for wrongful eviction, conversion, and negligence. The trial court found that appellant was entitled to compensatory damages from the corporate appellee for negligence and wrongful eviction,[2] including non-economic damages for humiliation and embarrassment, but not to punitive damages. The court further found that Plumley, the individual appellee, was not liable on any of the claims.

■ We agree with appellant's principal contention on appeal that the trial court erred by applying incorrect standards in determining the individual liability of appellee Plumley.[3] Accordingly, we remand to the trial court for further proceedings consistent with this opinion.

### I.

Appellant, Edward Camacho, rented a room at the Hawthorne Hotel on December 4, 1985, and lived there for approximately one month. Appellant testified that he had been told that although the hotel did not have monthly rates, if he stayed more than one month he would get a refund of several hundred dollars. Appellee Plumley testified that the hotel did not have such a policy and that he had never authorized a refund in any particular case. For the first thirty days of his stay, appellant paid his

ty as relevant in determining his noneconomic damages; a litigant is not entitled to recover greater damages than actually suffered. See RESTATEMENT (SECOND) OF TORTS § 905, comment i (1977). Likewise, under principles of collateral estoppel, the trial court was not bound, simply on the basis of the bad faith determination of the RACD, to award punitive damages, given the discretionary nature of such an award and the egregiousness of the conduct that must underlie such damages. See, e.g., Washington Medical Center v. Holle, 573 A.2d 1269, 1284 (D.C.1990).

daily rent. Appellant then requested a refund and an employee of the hotel denied the existence of any refund policy. Appellant believed that he was entitled to a refund, so he did not pay rent on the thirty-first or thirty-second day. On the thirty-second day, the police were called to evict appellant from the hotel.

Upon being evicted from the hotel, appellant had nowhere to live, and thus spent the next few nights at a bus station and then a period of time at various homeless shelters. While staying at one of those shelters, appellant returned to the Hawthorne Hotel to reclaim his belongings, and was told that they had been discarded on the day of his eviction.

Appellant filed an action against Arven Plumley and 1440 Rhode Island Avenue Corporation in Superior Court on December 6, 1986, alleging negligence, conversion, and violations of the hotel lien law, based upon his eviction from the Hawthorne Hotel. He also filed a tenant petition against the corporate appellee (as a "housing provider") at the Rental Accommodations and Conversion Division of the Department of Consumer and Regulatory Affairs ("RACD").[4]

A hearing examiner found, *inter alia,* that the Hawthorne Hotel was not exempt from the Rental Housing Act of 1985[5] as appellees claimed,[6] and that the first room rented to appellant was below the minimum space requirement of the housing regulations.[7] The examiner also found that appellant had an agreement with the housing provider, in which appellant was to received a refund of $324.00 after staying at the hotel for one month. The examiner further found that the housing provider had resorted to self-help in evicting appellant, without seeking judicial adjudication of appellant's claim that no rent was due, and without a judicial order divesting the tenant of his right of possession.[8] Finally, the examiner found that the housing provider's violations of the Act were committed knowingly and in bad faith.

Based on these findings of fact, the examiner concluded as a matter of law that the hotel was subject to the Rental Housing Act and was not properly registered under the Act,[9] that the hotel as a housing provider had charged appellant in excess of the rent ceiling,[10] had unlawfully reduced

4. "Housing provider" is defined as
 a landlord, an owner, lessor, sublessor, assignee, or their agent, or any other person receiving or entitled to receive rents or benefits for the use or occupancy of any rental unit within a housing accommodation within the District.
 D.C.Code § 45–2503(15) (1990).
 "Housing accommodation" is defined as
 any structure or building in the District containing 1 or more rental units and the land appurtenant thereto.... [It] does not include any hotel or inn with a valid certificate of occupancy or any structure, including any room in the structure, used primarily for transient occupancy....
 D.C.Code § 45–2503(14) (1990).

5. *See* D.C.Code §§ 45–2501 to 2594 (1990) (Rental Housing Act of 1985).

6. Appellees had not registered the building in accordance with the Rental Housing Act, which requires the registration of all housing accommodations, unless they are exempt. *See* D.C.Code § 45–2515(f) (1990). Appellees maintained that they were exempt from the rent control act because the building was a hotel and therefore not a housing accommodation. Appellees failed, however, to respond to a subpoe-

na demanding production at the hearing of documentation in support of this claim. They did not produce either a registration statement or a claim of exemption statement, one of which they were required to file.

7. Appellant initially paid $18.80 per day, and was subsequently moved into a larger room at his request, for which he paid $20.80 per day.

8. A landlord's common law right to self-help eviction was abrogated by statute. *Mendes v. Johnson,* 389 A.2d 781, 787 (D.C.1978) (en banc) ("the summary procedure provided by Congress did, by necessary implication, abolish the common-law right of self-help"); *see* D.C.Code § 45–1410 (1990). Instead, the landlord may bring an action in Superior Court seeking dispossession of the tenant. *See* D.C.Code § 45–1410 (1990). Where the landlord illegally engages in self-help eviction, the tenant has a cause of action in tort. *See Mendes, supra,* 389 A.2d at 787.

9. *See* D.C.Code § 45–2515(f) (1990).

10. *See* D.C.Code § 45–2516(a) (1990). The housing provider failed to respond to a subpoena of rent records and to register the property,

appellant's services and facilities,[11] and had unlawfully retaliated against appellant.[12] The hearing examiner also concluded that the violations of the Act were committed in bad faith, and therefore, that appellant was entitled to attorney's fees and a treble refund of all rent paid to the housing provider.[13] No appeal was taken from this decision.

After the hearing examiner's ruling, appellant moved to amend his Superior Court complaint to include claims for wrongful eviction, enforcement of the RACD decision, and punitive damages. After a non-jury trial, the trial court found that appellant was entitled to enforcement of the RACD decision, and compensatory damages for negligence and wrongful eviction from the corporate appellee, but not to punitive damages. The trial court divided the compensatory damages into two parts: (1) $2,000 for the value of the lost possessions,[14] and (2) $2,500 for humiliation and embarrassment. The court further ruled that Plumley, the individual appellee, was not liable on any of the claims, because appellant had failed to demonstrate either ultra vires acts or grounds to pierce the corporate veil.

and therefore carried the burden of establishing a base rent or rent ceiling to justify the rent charged. The housing provider failed to satisfy this burden and, in fact, provided no evidence on this issue at all. Based upon this failure, the examiner determined the ceiling to be zero dollars, and thus, all rent charged to appellant over that amount (i.e., the entire amount of rent charged to appellant) was illegally charged.

**11.** *See* D.C.Code § 45–2521 (1990).

**12.** *See* D.C.Code § 45–2552(a) (1990). This section makes it illegal for a housing provider to take any retaliatory action against any tenant ... includ[ing] any action or proceeding not otherwise permitted by law which seeks to recover possession of a rental unit, action which would ... constitute undue or unavoidable inconvenience, violate the privacy of the tenant, ... or any other form of threat or coercion. *Id.* Evicting appellant and discarding his belongings without judicial intervention is "not otherwise permitted by law," *see id.,* and thus, the hearing examiner ruled that this section had been violated by the housing provider's actions

## II.

Appellant relies on two theories to hold Plumley individually liable for the eviction and negligence: (1) a corporate officer's individual liability for torts which the officer committed or participated in, and (2) a shareholder's personal liability upon the court's "piercing the corporate veil." As to the former, appellant contends that the trial court did not rule on this theory, but instead applied the law relevant to a third theory, *viz.*, ultra vires activity, or, otherwise put, the trial court erroneously limited a corporate officer's individual liability for torts solely to those that were ultra vires.[15] As to the latter, appellant claims that the trial court erred in failing to pierce the corporate veil as the result of a misapplication of the principles of law applicable to that doctrine. We turn to these issues.

### A.

■■■ Under the law of the District of Columbia, corporate officers are not shielded by the limited liability of the corporation for liability for their own tortious acts. They are individually liable for the torts which they "commit, participate in, or inspire," even though the acts are performed in the name of the corporation. *See Vuitch v. Furr*, 482 A.2d 811, 821 (D.C.

in illegally evicting appellant and discarding his personal possessions.

**13.** *See* D.C.Code § 45–2591(a) (authorizing treble refund) and § 45–2592 (1990) (authorizing award of attorney's fees).

**14.** Appellant testified to the nature and value of his possessions. The trial court, however, disbelieved this testimony and assessed the value of the items it believed appellant actually owned and lost.

**15.** There was considerable confusion during the trial regarding the theories by which Plumley could be held individually liable. While counsel for appellant may not have articulated the theories on which appellant sought to hold Plumley liable with the precision that would be ideal, we think appellant's general position was sufficiently presented to preserve the issue for appeal. *Cf. Hessey v. Burden*, 615 A.2d 562, 580, n. 28 (D.C.1992) ("[b]ecause this argument was made to the trial court, but was not decided, we deem it properly preserved for appellate review").

1984); *see also* 3A WILLIAM M. FLETCHER, CYCLOPEDIA OF CORPORATIONS § 1135 (1969) (it is. "thoroughly well settled that a person is personally liable for all torts committed by him ... notwithstanding he may have acted as the agent or under directions of another"); RESTATEMENT (SECOND) OF AGENCY § 343 (1984) ("[a]n agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal"). This court has stated that

> [c]orporate officers are liable for their torts, although committed when acting officially. In other words, corporate officers, charged in law with affirmative official responsibility in the management and control of the corporate business, cannot avoid personal liability for wrongs committed by claiming that they did not authorize and direct that which was done in the regular course of that business, with their knowledge and with their consent or approval, or such acquiescence on their part as warrants inferring such consent or approval.

*Vuitch, supra,* 482 A.2d at 821 (quoting *Bethesda Salvage Co. v. Fireman's Ins. Co.,* 111 A.2d 472, 474 (D.C.1955) (quoting 3A FLETCHER, *supra,* § 1135)). The fact that the corporation may also be liable does not excuse the individual. *Id.*

■ Individual liability attaches when a corporate officer either physically commits the tortious conduct, or participates in " 'some meaningful sense' " in the tortious conduct. *See id.* at 823. Sufficient participation can exist where there is "an act or omission by the officer which logically leads to the inference that he or she had a share in the wrongful acts of the corporation which constitute the offense." *Snow v. Capitol Terrace, Inc.,* 602 A.2d 121, 127 (D.C.1992); *see Bethesda Salvage Co., supra,* 111 A.2d at 474. An officer's liability is not based merely on the officer's position in the corporation; it is based on the officer's behavior and whether that behavior indicates that the tortious conduct was done within the officer's area of affirmative official responsibility and with the officer's consent or approval. *See Vuitch, supra,* 482 A.2d at 821. This type of liability

is not derivative; it is based on wrongful acts by the individual being held accountable. Every individual is liable for his or her own torts, and there is no exception for corporate officers. Corporate officers cannot be shielded from tort liability by claiming that the actions were done in the name of the corporation.

In *Vuitch, supra,* 482 A.2d at 813, a patient brought an action against a physician, the physician's wife, and the incorporated clinic owned by the two of them, for injuries she suffered as the result of an abortion performed at the clinic. Although the physician's wife, Mrs. Vuitch, was not present when the operation took place, had no medical training, and did not determine or participate in the development of the medical policy for the clinic, this court held that the facts were sufficient to create a jury question on whether Mrs. Vuitch could be held liable for the plaintiff's injuries based upon her participation in the tortious conduct. The court emphasized that Mrs. Vuitch, together with her husband and son, was one of the three directors of the corporation, she and her husband owned all of the corporate stock, and she was the corporation's secretary-treasurer, with duties in the areas of business and finance. The court also found it significant that Mrs. Vuitch was present in the clinic several days each week, made appointments for patients, participated in counseling services for clinic patients, and had been aware of the clinic's policy of keeping patients overnight (which policy was one aspect of the tortious conduct). The court found that these responsibilities and activities were sufficient to support a jury finding of Mrs. Vuitch's liability for her own acts. *See Vuitch, supra,* 482 A.2d at 824; *see also Snow, supra,* 602 A.2d at 127 (reasonable jury could find landlord individually liable for tenant's injuries when landlord physically pulled down a portion of the ceiling that eventually fell on plaintiff).

The involvement and participation of Arven Plumley bears similarities to that of Mrs. Vuitch. First, Plumley was president and chief operating officer of the corporation. Second, he was primarily responsible

for setting the policies of the hotel,[16] and he made sure that the policies of the hotel were carried out. Third, Edward Rowland, the former manager of the hotel, testified that it was standard practice at the hotel to call the police (rather than to initiate judicial action) whenever a tenant overstayed.[17] Fourth, Naomi Martin, a former desk clerk and supervisor at the hotel, testified that the police had been called on other occasions in connection with the evictions. The court should have addressed the nature of Plumley's involvement with the alleged torts and whether these activities rose to the level of the participation necessary to hold Plumley individually liable.

■■■■ The trial court failed to address the level of Plumley's involvement and participation when it determined that Plumley was not individually liable. Instead, the court held that Plumley's actions would have to be ultra vires (outside the scope of his authority) in order for Plumley to be individually liable. The court then held that since there was no indication that Plumley's actions were "entirely inconsistent with his job responsibilities," the acts were not ultra vires and he could not be held personally liable. In making this determination, the court misapplied the law. The court appeared to be referring to the legal standard for holding a corporation liable under a respondeat superior theory.[18] Whether the employee's acts are outside the scope of employment is relevant in determining whether the corporation is liable for acts of the employee, not whether the employee is liable for his own acts, as in this case. Ultra vires activity relates to the liability of the *corporation*. If actions of the officer are ultra vires, then the corporation may not be liable for those actions, see *Lancaster v. Canuel*, 193 A.2d 555, 558–59 (D.C.1963), but if the actions of the officer are within the scope of that officer's authority, then the corporation will be liable for those acts.

The scope of Plumley's authority to act for the corporation, however, was irrelevant to the issue of his personal liability in this case. Appellant sought to hold the *individual* liable for acts of the *individual*. The relevant inquiry is whether the individual committed the tort, or at least participated to such an extent that it can be said that he is responsible for a significant share of the commission of the tort. *See Vuitch, supra*, 482 A.2d at 821. Here, the trial court found that there was tortious conduct, but made no finding regarding the extent to which Plumley was involved with that conduct. The case must therefore be remanded to the trial court for a determination of whether Plumley is individually liable for wrongful eviction, conversion, or negligence under the principles expounded above.

### B.

■■■■ The other theory considered by the trial court in determining the individual liability of Plumley was that of piercing the corporate veil.[19] This court has held that in order to pierce a corporate veil and hold individual shareholders liable,[20] there must be "unity of ownership and interest,"

16. He testified that only when he was absent would anyone else share in such responsibility.

17. Plumley, however, testified that it was not the practice of the hotel to evict people by calling the police.

18. Under the doctrine of respondeat superior, employers are liable for the actions of their employees that are committed within the scope of the employees' employment. *Boykin v. District of Columbia*, 484 A.2d 560, 561 (D.C.1984).

19. A corporation is generally regarded as an entity separate and distinct from its shareholders. *Vuitch, supra*, 482 A.2d at 815; *Harris v. Wagshal*, 343 A.2d 283, 287 (D.C.1975). This

"fiction," by which the law treats a corporation as a separate person, allows individuals to invest in the entity without exposing themselves to full personal liability. Instead, their liability is limited to their investment in the corporation. Piercing the corporate veil enables the court in certain circumstances to disregard the corporate form, strip the shareholders of this limited liability, and reach personal assets of the shareholders.

20. As counsel for appellee pointed out in oral argument, piercing the corporate veil relates to liability of *shareholders*, not liability of corporate officers. This distinction was noted neither by counsel during the trial nor in the findings of the trial court.

*Vuitch, supra,* 482 A.2d at 815 (citing *McAuliffe v. C & K Builders,* 142 A.2d 605, 607 (D.C.1958)), and " 'it must appear that the corporation is not only controlled by those persons, but also that the separateness of the persons and the corporation has ceased and ... an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice.' " *Id.* (quoting *Burrows Motor Co. v. Davis,* 76 A.2d 163, 165 (D.C.1950)).[21] Additionally, this court has held that since piercing the corporate veil is a doctrine of equity, "the factor which predominates will vary in each case,[22] and the decision to pierce will be influenced by considerations of who should bear the risk of loss and what degree of legitimacy exists for those claiming the limited liability protection of the corporation." *Id.* at 815–16.

Appellant argues that the trial court misapplied the law in requiring appellant to specifically demonstrate undercapitalization and the absence of a legitimate business purpose in order to allow the court to pierce the corporate veil. Appellant alleges that by focusing on only two factors, the court ignored other relevant evidence, necessitating a reversal of the judgment and a finding that the corporate veil should have been pierced, or in the alternative, that the case should be remanded for consideration of the additional factors.

 While appellant correctly points out that it is erroneous to consider only two factors in determining whether to pierce the corporate veil, this record does not demonstrate that the court considered only those two factors, to the exclusion of all other relevant factors and circumstances. A finding that the corporation was not undercapitalized may not end the inquiry,

but there is no indication here that it did. The court also concluded that the corporation was not merely an "alter ego" of its shareholders, which tends to show that there was no unity of interest and ownership. The trial court was not required to list each factor that it considered, and its findings, while general, support its conclusion that the corporate veil should not be pierced. *See Vuitch, supra,* 482 A.2d at 815; *Harris, supra,* 343 A.2d at 287.

The judgment against 1440 Rhode Island Avenue Corporation awarding compensatory damages but not punitive damages is affirmed. The judgment in favor of Arven Plumley is vacated, and the case is remanded for further consideration of the issue of Plumley's individual liability in light of this opinion.

*So ordered.*

21. The fraud does not have to be directly related to the obligation on which the plaintiff sues. *See Harris, supra,* 343 A.2d at 287–88. "[O]ther considerations of equity and justice can justify piercing the corporate veil." *Id.* at 288.

22. Some of the factors to consider are the nature of the ownership and control, whether corporate minutes and adequate corporate records were maintained, whether the corporate formalities necessary for issuance or subscription of stock, such as formal approval of the stock issue by an independent board of directors, were fol-

lowed, whether funds and other assets of the corporation were mingled with the individual shareholders' funds, whether corporate funds or assets were diverted to non-corporate uses such as the personal uses of the corporation's shareholders, and whether the same office space was used by the corporation and its individual shareholders. *See Labadie Coal Co. v. Black,* 217 U.S.App.D.C. 239, 243–46, 672 F.2d 92, 97–99 (1982); see also *Vuitch, supra,* 482 A.2d at 816.