ADVANTAGE HEALTH PLAN,
INC., Plaintiff,

v.

Thomas KNIGHT and Dalton
Tong, Defendants.

No. CIV. A. 00–560(TPJ).

United States District Court,
District of Columbia.

April 19, 2001.

Matthew A. Anzaldi, Shaw Pittman, Washington, DC, for Advantage Healthplan Inc., plaintiffs.

Leonard Charles Greenebaum, Ralph G. Blasey, III, Baker & Hostetler, L.L.P., Michael MacKager York, Wehner & York, Washington, DC, for Thomas Knight, Dalton Tong, defendants.

*MEMORANDUM AND ORDER*

JACKSON, District Judge.

### I.

Plaintiff Advantage Health Plan, Inc. ("Advantage"), brings this tortious interference and negligence action against Thomas Knight, the chief financial officer of Greater Southeast Community Hospital ("GSECH") in Washington, D.C. from 1995 to 1997, and Dalton Tong, who was President and CEO of Greater Southeast Health Care System, the parent company of GSECH, at all relevant times. Advantage (formerly known as "D.C. Health Co-operative") is a health maintenance organization located in Washington, D.C. that at all relevant times as well was operating under a pre-paid, capitated provider agreement with the D.C. Department of Human Services ("DHS") under D.C.'s Medicaid

Managed Care Program. Advantage arranges for certain Medicaid-supported services to be provided to Medicaid recipients enrolled as members of Advantage, and is compensated by monthly "capitated payments," calculated on the basis of the number of its Medicaid-eligible members.

GSECH was also a party to an agreement with DHS to provide medical services to D.C. Medicaid patients. Under its contract with DHS, GSECH agreed to accept payment from the District of Columbia as payment in full for the services provided under the Medicaid program and not to seek additional payments for those services. In its two-count complaint here, Advantage alleges that GSECH engaged in a pattern of illegally billing Advantage's Medicaid-recipient members directly to collect excess cost balances on their bills, notwithstanding having received payments from Advantage in the prescribed amounts. Plaintiff alleges that the individual named defendants, as well as other GSECH officers, individually and collectively, with knowledge of all applicable laws and regulations regarding the billing of Advantage's Medicaid members, caused GSECH to implement the "balance billing" system described above, as a result of which, the number of Advantage's enrolled Medicaid members dropped from over 4,000 to under 2,000, costing it significant revenue each year from D.C. Medicaid.

Plaintiff filed the instant complaint in D.C. Superior Court on February 15, 2000, and the case was removed to federal court on March 16, 2000 based on diversity jurisdiction. Presently pending before the Court are defendants' motion to dismiss the complaint, and an alternative motion to enforce an automatic stay pursuant to the Bankruptcy Act.

### II.

Defendants filed their motion to dismiss on March 6, 2000, asserting, *inter alia,*

defenses of *res judicata* and the statute of limitations. It is well-settled that when considering a motion to dismiss, a court must take the allegations of the complaint as true, and any ambiguities must be resolved in favor of the plaintiff. Nevertheless, "[a] court must dismiss a complaint where, even assuming all the factual allegations are true, the plaintiff has failed to establish a right to relief based upon those facts." *Gregg v. Barrett*, 771 F.2d 539, 547 (D.C.Cir.1985).

### Res Judicata

The record before the Court discloses that, in March, 1997, plaintiff, then trading as D.C. Health Cooperative, filed a lawsuit in D.C. Superior Court against GSECH and Southeast Emergency Physicians [1] as the only defendants, alleging the same negligence and tortious interference causes of action asserted in the present complaint against Messrs. Knight and Tong individually. On February 12, 1999, a Superior Court jury returned verdicts of $800,000 in compensatory damages and $1.4 million in punitive damages for D.C. Health Cooperative against GSECH alone for its tortious interference with D.C. Health Cooperative's profitable relationship with DHS and its own members. Judgment was entered accordingly on February 12, 1999. Shortly thereafter, on May 27, 1999, GSECH filed for bankruptcy.

■■■ Under the doctrine of claim preclusion (or *res judicata*), a final judgment on the merits of a claim bars relitigation of the same claim in a subsequent proceeding between the same parties or their privies. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *I.A.M. National Pension Fund v. Industrial Gear Mfg. Co.*, 723 F.2d 944, 946–947 (D.C.Cir.1983); *Faulkner v. Government Employees Ins. Co.*, 618 A.2d 181, 183 (D.C.1992). Claim preclusion bars not only claims actually raised in the first action but also claims arising out of the same transaction that could have been raised in the original action. *See Faulkner*, 618 A.2d at 183; *I.A.M.*, 723 F.2d. at 947 n. 2 ("Where the final judgment is rendered in favor of plaintiff, the cause of action *merges* into the judgment, and plaintiff may not thereafter maintain another suit on the same cause of action.") (emphasis in original); *see also Semler v. Psychiatric Inst. of Washington*, 575 F.2d 922, 927 (D.C.Cir. 1978) (same). The three elements required for claim preclusion are: (1) a final judgment on the merits in the first action; (2) the present claim is the same as a claim that was raised or that might have been raised in the first proceeding; and (3) the party against whom *res judicata* is asserted was a party or in privity with a party in the previous case. *See Allen*, 449 U.S. at 94, 101 S.Ct. 411; *Washington Med. Ctr., Inc. v. Holle*, 573 A.2d 1269, 1280–1281 (D.C.1990).

■■ The verdicts at trial resulted in the entry of a final judgment on the merits in the first action by the D.C. Superior Court, and it is clear to this Court that the claims in both cases are the same. The complaints are nearly identical and the transactions (i.e., the "balance billing" of plaintiff's customers) complained of are entirely so. The grievances arose out of a common nucleus of fact; thus they constitute the same cause of action. *See Faulkner*, 618 A.2d at 183–184. "It is a fundamental purpose of claim preclusion to prevent the relitigation of claims that plaintiffs have already had a full and fair opportunity to litigate," as clearly was the case here. *Smith v. Jenkins*, 562 A.2d 610, 615 (D.C.1989). Plaintiff had a full and fair opportunity to litigate the issue

---

1. Southeast Emergency Physicians was described in the complaint as a "physicians' group" under contract to provide medical services at GSECH, i.e., presumably the medical staff, or a component thereof.

of the balance billing against its defendants of choice in its previous case in D.C. Superior Court. The only remaining issue is whether the individual defendants here were in privity with GSECH. "A privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case." *Smith*, 562 A.2d at 615.

■ The Court concludes that defendants Knight and Tong were agents of GSECH in all relevant respects in the matter of "balance billing," and thus were in privity with GSECH. For *res judicata* purposes, "[a]gents and principals . . . are not ordinarily in privity with each other," *Usher v. 1015 N St. N.W. Coop. Ass'n*, 120 A.2d 921, 922 (D.C.1956), and a decision on the merits in an action against the principal "is *res judicata* in a later action against the agency only 'if the prior action concerned a matter within the agency.'" *Major v. Inner City Prop. Mgmt., Inc.*, 653 A.2d 379, 381 (D.C.1995). The D.C. Court of Appeals in *Major* explained that "[t]his limitation on *res judicata* in the context of the principal—agent relationship is a corollary of the rule that a principal is not liable for an agent's tortious conduct unless that conduct is within the scope of the agency." *Id.* at 381 n. 5. The prior action here concerned a matter within the agency.[2] Moreover, "[t]he doctrine of *res judicata* is founded on a policy of ending litigation once a party has had his day in court and as such renders immaterial whether [the claimant] has chosen to test [its] right against the principal or the agent, provid-

ed the issue to be tried is identical as against both." *Usher*, 120 A.2d at 923. In other words, as it was formerly said, plaintiff "split its cause of action": the issue presented is identical as to both GSECH and Knight and Tong. Thus, the claim has already been adjudicated. Having already won a judgment in Superior Court with which it is now dissatisfied because the judgment debtor is in bankruptcy, plaintiff brings essentially the same claims to this Court against others whom it might have—but didn't—seek to hold liable as well. The plaintiff has already had its opportunity to litigate this claim against one and all, and is barred by claim preclusion from bringing it again against potential defendants it elected to ignore.

Plaintiff cites several District of Columbia cases for the proposition that corporate officers may be individually liable for their own torts, even when the corporation itself is also liable and even when the acts are committed in the name of the corporation. *See, e.g., Snow v. Capitol Terrace, Inc.*, 602 A.2d 121, 127 (D.C.1992); *Camacho v. 1440 Rhode Island Ave. Corp.*, 620 A.2d 242, 246–247 (D.C.1993). And so they may be, but it does not follow that corporate officers are never in privity with the corporation for which they work. In *Snow* and *Camacho*, the corporate officers were joined in the same lawsuit as the corporate principal, and not in a subsequent action brought as an afterthought. The *Snow* and *Camacho* cases never addressed the question of whether the corporate officer could be in privity with his corporate employer.[3]

2. That Knight and Tong are sued "individually" is irrelevant. The instant complaint charges that the defendants were "directly responsible for overseeing the finances, billing procedures and collection practices of GSECH." Complaint ¶ 5. In other words, they are sued for conduct in which they engaged while acting as officers of GSECH, the

same conduct, within the agency, that formed the basis of the previous complaint.

3. Plaintiff's reliance on *Dudley v. Smith*, 504 F.2d 979 (5th Cir.1974), is similarly unavailing. In *Dudley*, the Fifth Circuit held that the president and de facto sole shareholder of a corporation was its alter ego and therefore was bound under *res judicata* by the results of

*Statute of Limitations*

█ Generally, a statute of limitations begins to run "when the plaintiff knows both the existence and the cause of his injury." *United States v. Kubrick,* 444 U.S. 111, 113, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). The parties agree that under D.C.Code, Section 12–301, the statute of limitations for tortious interference and for negligence are each three years. Paragraph 26 of the complaint alleges that on September 16, 1996, plaintiff's attorneys wrote to GSECH complaining about the hospital's "balance billing," claimed that the billing constituted "interference" with plaintiff's relationships with its members, and threatened further legal action. The facts set forth in the September 16, 1996 letter, attached to the complaint as exhibit A, are the basis for plaintiff's present claim as well.

█ Defendants argue that plaintiff was aware of its injuries as of September 16, 1996, thus the latest possible date on which plaintiff could have filed this claim was September 16, 1999. Plaintiff counters that the claims raised in the complaint are "continuing torts" for which a cause of action does not accrue, and the statute of limitations does not begin to run, until the tortious activity has ceased. *See Logiurato v. ACTION,* 490 F.Supp. 84, 91 (D.D.C. 1980); *Rochon v. Federal Bureau of Investigation,* 691 F.Supp. 1548, 1563–1564 (D.D.C.1988).

The Court concludes that the continuing tort doctrine does not apply in this case. In a case involving common law torts, the D.C. Court of Appeals cited with approval and relied on a previous decision (involving, incidentally, federal claims) holding that "once the plaintiff has been placed on notice of an injury and the defendants' wrongful conduct in causing it, the policy disfavoring stale claims makes application of the 'continuous tort' doctrine inappropriate." *See Hendel v. World Plan Executive Council,* 705 A.2d 656, 667 (D.C.1997). As of September 16, 1996, plaintiff was on notice of its injury and defendants' allegedly wrongful conduct; thus to be timely, a complaint against Messrs. Knight and Tong should have been filed as of—and no later than—September 16, 1999.

█ Even were the Court to apply the continuing tort doctrine, however, the defendants still prevail. Paragraph 27 of the complaint alleges that the defendants "individually and collectively, assisted and permitted GSECH to continue its illegal conduct" after September 16, 1996, attaching as evidence two bills dated September 23, 1996 and January 1, 1997. The complaint does not allege any tortious activity after January 1, 1997. Thus the last date on which the complaint could have been timely filed even under the continuing tort doctrine was January 1, 2000. The instant complaint was not filed until February 15, 2000 and is barred by the statute of limitations as well.

For the foregoing reasons, it is, this 19th day of April, 2001,

ORDERED, that defendants' motion to dismiss the complaint is granted; and it is

---

a previous adjudication of liability against the corporation.

The instant case is more analogous to *Lowell Staats Mining Co. v. Philadelphia Elec. Co.,* 878 F.2d 1271 (10th Cir.1989), in which the plaintiff unsuccessfully sued an electric utility on breach of contract and fraudulent conveyance claims and then initiated a second suit against the individual officers and directors of the companies. The Tenth Circuit noted that to the extent that the second suit was based on the officers' "participation" in the fraudulent conveyances, then the claim is against the officer in his capacity as agent of the principal because "[a] corporation acts through its officers, directors, and agents." *Id.* at 1276.

FURTHER ORDERED, that the Clerk of the Court forthwith enter judgment for defendants Thomas Knight and Dalton Tong against the plaintiff Advantage Health Plan, Inc.; and it is

FURTHER ORDERED, that defendants' motion for a stay [7] is denied as moot.