Cynthia PARKER, et al., Appellants,

v.

Jametta W. MARTIN, et al., Appellees.

No. 04–CV–262.

District of Columbia Court of Appeals.

Argued June 27, 2006.
Decided Aug. 17, 2006.

Jason A. Kerpelman, Washington, for appellants.

David A. Carter with whom Douglas C. Meister was on the brief, for appellees.

Before REID and GLICKMAN, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

This is an appeal from the entry of summary judgment to the defendants in an action for damages on account of lead poisoning. We reverse the judgment in part and remand for further proceedings.

Between 1979 and July 1984, Louise Parker and her two teenage children resided as tenants in an apartment at 1600 A Street, Unit 2, in Northeast Washington, D.C. ("the Property"). On November 13, 1980, Louise Parker's daughter, appellant Cynthia Parker, gave birth to appellant David Matthews (collectively "the Parkers"). The property was owned by appellees Dr. Harold and Ms. Jametta Martin [1] ("the Martins") and managed by appellee Phoebea Queen ("Queen").[2] The lease agreement between Louise Parker and the Martins named Louise Parker's teenage daughter, Cynthia Parker, as a resident but was never amended to include David Matthews as an occupant of the premises.[3] In the complaint David Matthews was characterized as "an invitee of the tenant during 1983 to 1985." In June 1983, tests revealed that the David Matthews had elevated levels of lead in his blood.

In August 1983, Queen received a Housing Code Violation Notice requiring abatement of lead-based paint from the

---

1. Dr. Harold Martin died during the pendency of this case.

2. The Martins had hired Queen to bring the building into compliance with the housing rental requirements and to ensure that the Property was approved for section eight rental housing by an inspector from the Housing Authority.

3. The trial court found it unrebutted that "at no time did Louise Parker tell Phoebea Queen that David Matthews resided in Apartment 2. Louise Parker told Phoebea Queen when she went to Apartment 2 that she was babysitting for her daughter."

Property.[4] This was the first notice Queen received regarding lead paint in the Property.[5] Queen spoke with Louise Parker regarding the Violation Notice and Louise Parker told Queen that David Matthews, almost three years old at the time, had tested positive for lead poisoning. At Dr. Martin's direction, Queen hired Mr. Owens and Mr. Brown to remove the lead paint and repaint the Property. In November 1983, a Housing Inspector approved the lead paint removal and abated the violation.[6] No fine was imposed by the District of Columbia against either the Martins or Queen.

Attributing David Matthews' lead poisoning to his exposure to lead-based paint at the Property, the Parkers filed a complaint in February 1996 against Queen and two other persons who were misidentified as the owners of the Property.[7] Upon discovering the error, the civil action was terminated in September 1996 by the filing of a joint praecipe of dismissal against all parties with prejudice.[8] A second lawsuit against Queen was later filed; however, it was dismissed in March 1999, because Queen was never served. Finally, the Parkers brought this action against Queen and the Martins in February 2000, alleging damages due to the lead poisoning of David Matthews while he resided at the Property between November 1980 and July 1984.

The February 2000 complaint charged Queen and the Martins with negligence by either causing or allowing the continued existence of lead-based paint on the Property's exterior and interior walls, doors, floors, ceilings and woodwork and knowingly allowing lead-based paint to chip and flake thereby rendering the Property unsafe and dangerous, and unfit for human habitation. As a consequence of the defendants' actions, Cynthia Parker alleged David Matthews had ingested lead-based paint and paint dust and, as a result, had suffered permanent brain damage and other serious injuries for which they were entitled to compensation. Cynthia Parker also sought compensation for herself for the loss of her child's services. Along with compensatory damages, punitive damages were requested and, under the Consumer Protection Procedures Act, treble damages and reasonable attorneys' fees.

Following a lengthy period of discovery, the Martins and Queen each moved for summary judgment on multiple grounds. On June 24, 2003, the trial court granted Queen's motion for summary judgment on the merits and on Queen's contention that appellants' claims against her were barred based on *res judicata*.[9] With respect to

4. The Violation Notice, issued on August 31, 1983, cited Housing Code § 2605.4 which was added to the Housing Regulations in April 1973. See 16 D.C.Reg. 931 (Apr. 30, 1973).

5. Specifically, lead paint was found in the rear room (walls, window sills, sashes and frames), bathroom (walls, window sills, sashes and frames) and kitchen (all doors and jambs).

6. David Matthews' blood lead level decreased from 51 (ug/dl) on August 11, 1983 to 38 (ug/dl) on September 28, 1983. His blood lead level was 33 (ug/dl) on December 19, 1983 and April 23, 1984; it was 23 (ug/dl) on October 23, 1984.

7. The address listed in the 1996 complaint was 1600 A Street S.E. as opposed to 1600 A Street N.E. which is the correct address of the property. The owners named on the complaint were the owners of the S.E. property.

8. The praecipe stated, "Please enter the above-captioned case as **Dismissed With Prejudice.**"

9. In September 2002, the trial court held a hearing on Queen's motion for summary judgment. At the hearing, the trial court requested that the parties submit a memorandum of law addressing whether a claim filed by a minor seventeen years after the injury could be dismissed on the grounds of preju-

the latter, the trial court ruled that the erroneous quadrant and the wrong naming of owners did not alter the core allegation in both complaints, specifically, that David Matthews was exposed to lead paint at the time that he resided in the Property managed by Queen and owned by the Martins. The trial court also ruled on the merits and concluded that the causes of action failed for lack of evidence that Queen had notice of any lead paint hazard in the Property prior to the August 1983 Violation Notice.

On February 11, 2004, the trial court granted summary judgment in favor of the Martins on the merits.[10] The trial court ruled that appellants' negligence causes of action against the Martins also failed for lack of evidence of notice and that appellants' Consumer Protection Procedures Act ("CPPA") claims were precluded because the CPPA was not applicable to landlord-tenant relations and did not authorize the award of damages for personal injuries of a tortious nature. The trial court also held that there was no evidence of willful, reckless or malicious conduct such as would be necessary to support appellants' claims for punitive damages, and that District of Columbia law does not recognize a parent's cause of action for loss of services of a minor child.

## II.

On appeal, the Parkers contend that the trial court erred in rejecting their negligence and CPPA claims and their effort to hold the Martins and Queen personally liable. "In reviewing a trial court's

grant of summary judgment, we make an independent review of the record and employ the same standards as does the trial court in initially considering the motion." *Croce v. Hall,* 657 A.2d 307, 309–10 (D.C. 1995) (citation omitted). This court must determine whether the party awarded summary judgment demonstrated that there is no genuine issue of material fact in dispute and that it is entitled to judgment as a matter of law. *Childs v. Purll,* 882 A.2d 227, 232 (D.C.2005). The record is viewed in the light most favorable to the non-moving party. *Settles v. Redstone Dev. Corp.,* 797 A.2d 692, 694 (D.C.2002) (citation omitted).

### A. Negligence Claims

"Generally, in order to prevail on a claim of negligence, the plaintiff must establish a duty of care, a deviation from that duty, and a causal relationship between that deviation and an injury sustained by the plaintiff." *Youssef v. 3636 Corp.,* 777 A.2d 787, 792 (D.C.2001). Issues of negligence frequently "are not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner." *Croce,* 657 A.2d at 310 (internal quotation marks and citation omitted). "However, the question of whether a defendant owes a duty to a plaintiff under a particular set of circumstances is 'entirely a question of law ... [that] must be determined only by the court.'" *Id.* (quoting W. PAGE KEETON, PROSSER AND KEETON ON TORTS § 37, at 236 (5th ed.1984)).

In finding that the Parkers' claims of negligence[11] did not survive summary

---

dice. Appellants submitted a memorandum that only cited to Maryland law despite the trial court's instruction to only submit District of Columbia law on the topic.

**10.** On March 12, 2003, appellants timely filed a notice of appeal as to both the June 24, 2003 and February 11, 2004 orders.

**11.** From the pleadings submitted to the trial court, it appears that appellants are arguing a theory of negligence *per se.*

judgment, the trial court proceeded from the premise that a landlord owes no duty to a tenant for failing to prevent or remedy a hazardous condition in leased premises unless the landlord had either actual or constructive notice of the condition. *See, e.g., Youssef,* 777 A.2d at 794. Although Queen and the Martins have not denied the presence of lead paint on the walls of the Property, the trial court found it undisputed that neither was aware of any lead paint hazard. The trial court summarized the undisputed evidence as follows:

> As the Property manager, Queen acted as an agent for the Martins. Plaintiffs acknowledge that Queen was their contact person for Property complaints and that she was the person that came to the Property to look at a problem or to check requested maintenance work. Plaintiffs make no allegations that any of Queen's visits were initiated by complaints about paint. Moreover, plaintiffs do not allege that the Martins had information that Queen did not have. Thus, this Court infers that if Queen had no knowledge that a paint issue existed, neither did the Martins. Having no notice of the lead paint hazard, the Martins have breached no duty to the tenants, and thus, are not liable for negligence to Plaintiffs.

We can discern no basis for disturbing the trial court's determination that neither Queen nor the Martins had any notice, actual or constructive, that lead paint was chipping, peeling or flaking from the walls during appellants' tenancy. However, that is not the end of the inquiry. Irrespective of such notice, the question remains whether Queen or the Martins may be found negligent simply for leasing an apartment with lead paint on the walls to appellants, because that condition in itself constituted a violation of the District of Columbia Housing Regulations and created a health hazard. This is a question that the trial court did not consider.

In *Childs, supra,* 882 A.2d 227, decided after the trial court's ruling in this case, we addressed the issue of constructive notice in a similar lead-based paint action by a tenant against a landlord.[12] We held that 14 DCMR § 707.3[13] placed the landlord on constructive notice to abate a lead paint hazard in any premises in which a child under the age of eight years would be residing. *Childs,* 882 A.2d at 237 (*citing Juarez v. Wavecrest Mgmt. Team Ltd.,* 88 N.Y.2d 628, 631, 672 N.E.2d 135, 137, 649 N.Y.S.2d 115, 117 (N.Y.1996) (holding that under a New York City lead abatement provision similar to § 707.3, a landlord who has actual or constructive notice that a child under seven years of age is residing in one of its apartment units "is chargeable with notice of any hazardous lead condition in that unit," and therefore is liable for damages in the event the child suffers lead poisoning from exposure to that condition)). Under *Childs,* an injured

**12.** The *Childs* case involved appellants' attorney, Jason Kerpelman, and the Martins' attorney, David A. Carter, and was adjudicated by the same trial judge, Judge Long.

**13.** Section 707.3 as originally adopted, read, in pertinent part, as follows:

> The owner of any residential premises (a) in which there resides a child under the age of 8 years or (b) to which a child under the age of 8 years is a regular visitor who spends a substantial portion of his time in the premises, shall maintain the interior and exterior surfaces of the residential premises free of lead or lead in its compounds in any quantity exceeding 0.5 of 1 percent of the total weight of the material or more than 0.7 milligrams per square centimeter, or in any quantity sufficient to constitute a hazard to the health of any resident of the residential premises or any regular visitor to the residential premises who spends a substantial portion of his time in the residential premises.

party would only have to show that either Queen or the Martins had actual or constructive notice that David Matthews was residing or a regular visitor at the Property to prove that they were in violation of § 707.3 and negligent.

■ Both in the trial court and now on appeal, appellants placed great reliance on § 707.3 as a basis for establishing that Queen and the Martins were on notice of the lead paint in the Property.[14] However, § 707.3 was adopted as part of the Lead–Based Paint Poisoning Prevention Act of 1983,[15] which was transmitted to Congress for a 30–day review on August 19, 1983. The Council of the District of Columbia gave notice that the 30–Day Congressional Review Period expired and the enactment was effective on October 8, 1983, several months after the notice to abate had been issued. See 30 D.C.Reg. 5407 (Oct. 8, 1983). Therefore, that statutory provision does not apply to the circumstances presented here. Thus, we must look to the statute in effect at the time David Matthews was exposed to lead at the Property.

The abatement notice cited Housing Code, § 2605.4 of Title 14 which was enacted in April 1973. So far as we can determine, it was in effect when the Property was rented to the Parkers and at the time when the child was first positively found to have elevated lead levels. It provides:

> The owner [16] of a residential building shall maintain the interior surfaces of the building free of lead or lead in its compounds in any quantity of more than 1 milligram per square centimeter or in any quantity sufficient to constitute a hazard to the health of any inhabitant of, or visitor to, the building.

This provision unlike its successor, § 707.3, does not distinguish between children and adults. Instead, § 2605.4 was apparently intended to protect any inhabitant or visitor from the grave health hazard created by exposure to lead-based paint. While we express no view on how § 2605.4 affects the claims here, we are satisfied that it should apply and not § 707.3. Accordingly, with respect to the trial court's ruling on the negligence claim, we reverse and remand for a determination whether the Parkers' claims are supportable under the applicable statutory provision.

### B. Claims Against Queen Barred By Res Judicata

■ On appeal, the Parkers argue that the trial court erred in finding that their claims against Queen were barred by *res judicata* because appellants never surrendered their claims against Queen with re-

---

14. In both oppositions to the motions for summary judgment, appellants argued that Queen and the Martins are negligent because they were in violation of § 707.3 despite the Martins' argument that § 707.3 was not enacted until after David Matthews was injured. The trial court did not address any specific housing regulations in its respective orders.

15. D.C. Law 5–35, 30 D.C.Reg. 4156 (Aug. 19, 1983).

16. The Housing Regulations define the term "owner" expansively as:
    any person who, alone or jointly or severally with others, meets either of the following criteria: (a) Has legal title to any building arranged, designed, or used (in whole or in part) to house one or more habitations; or (b) Has charge, care, or control of any building arranged, designed or used (in whole or in part) to house one or more habitations, as owner or agent of the owner, or as a fiduciary of the estate of the owner or any officer appointed by the court. Any persons representing the actual owner shall be bound to comply with the terms of this subtitle, and any notice or rules and regulations issued pursuant to this subtitle, to the same extent as if he or she were the owner.
    14 DCMR § 199.

spect to the correct Property nor with respect to Queen's management of that Property and because the two suits at issue relied on completely separate sets of facts, *res judicata* did not apply.[17]

This court has recognized that "a voluntary dismissal *with* prejudice constitutes a complete adjudication of the matter and precludes further action between the parties based on the principle of *res judicata* . . . ." *Thoubboron v. Ford Motor Co.,* 809 A.2d 1204, 1210 (D.C.2002) (emphasis in original) (*citing Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001)). No court has squarely addressed the issue presented by appellants that when the 1996 case was dismissed with prejudice it was only as to the claims against Queen with respect to the property located at 1600 A Street S.E. It is clear from the arguments put forth by Queen in the trial court, however, that the Parkers understood that their complaint in the 1996 case was directed at asserted negligence on Queen's part at 1600 A Street N.E., the actual residence.[18] The trial court found that Queen was unfairly prejudiced by the Parkers' decision to revive the complaint four years later, since she did not keep the documents nor other items needed for her defense because she rightly relied on the 1996 praecipe that the Parkers' claims would not be brought against her again.

■ "Under the doctrine of claim preclusion (*res judicata*), a valid final judgment on the merits absolutely bars the same parties from relitigating the same claim in a subsequent proceeding."

*(Charles) Williams v. Board of Trustees of Mount Jezreel Baptist Church,* 589 A.2d 901, 906 (D.C.1991) (*citing Washington Medical Center, Inc. v. Holle,* 573 A.2d 1269, 1280–81 (D.C.1990)); *Henderson v. Snider Bros., Inc.,* 439 A.2d 481, 485 (D.C. 1981) (en banc). "A final judgment on the merits 'embodies all of a party's rights arising out of the transaction involved, and a party will be foreclosed from later seeking relief on the basis of issues which might have been raised in the prior action.'" *(Charles) Williams,* 589 A.2d at 906 (*quoting Stutsman v. Kaiser Found. Health Plan,* 546 A.2d 367, 370 (D.C. 1988)). This doctrine also applies to judgments "entered by consent, compromise or agreement of the parties." *(Charles) Williams,* 589 A.2d at 906 (*quoting Universal C.I.T. Credit Corp. v. Gogos,* 184 A.2d 197, 198 (D.C.1962)).

In *Gogos,* the appellant filed an action demanding a monetary judgment or the return of a specifically identified automobile but filed a praecipe dismissing the action with prejudice before an answer was filed. *Gogos,* 184 A.2d at 198. Subsequently, appellant filed a second action solely for a monetary judgment arguing that while both the present action and the previous action involve the same parties, the same conditional sale and the same automobile, the primary purpose of each suit was different, and therefore, *res judicata* did not apply. *Id.* The court rejected this argument because appellant sought a monetary judgment in the first action, *res judicata* barred the second action.

---

**17.** Phoebea Queen who was represented by counsel at trial (not the same counsel as the Martins), did not submit a brief on appeal. Therefore, we review this matter on the appellant's brief alone. *See Copeland v. Cohen,* 905 A.2d 144 (2006).

**18.** The trial court also credited Queen's argument that she relied on the praecipe dismissing with prejudice the 1996 case and now, over 18 years after the events of this case took place, Queen is unable to reconstruct the pertinent facts and evidence necessary to present a defense. Appellants did not dispute this claim.

■ The Parkers' argument here that this action is a different cause of action from the 1996 case because it contains a different address is meritless. "It is the factual nucleus, not the theory upon which a plaintiff relies, which operates to constitute the cause of action for claim preclusion purposes." *Stutsman*, 546 A.2d at 370; *see also (Arthur) Williams v. Gerstenfeld*, 514 A.2d 1172, 1179 (D.C.1986) ("It is irrelevant that the nature of the two proceedings is different; as long as the parties are the same, and the essence of the claim and evidence necessary to establish it are the same, *res judicata* applies."). The Parkers pursued the 1996 claim on the same factual nucleus—alleging that Queen's failure to abate the lead paint resulted in David Matthews' injury—as the current case against Queen. The singular difference of the incorrect quadrant is not enough to demonstrate that the essence of the claim and the evidence necessary to establish it are not the same. Therefore, the trial court did not err in finding that *res judicata* applied.[19]

### C. Consumer Protection Procedures Act

■ Whether the Consumer Protection Procedures Act authorizes appellants to seek enhanced relief for appellees' alleged misrepresentations concerning the condition of the apartment rented to appellants at the Property presents only a question of law. *Childs*, 882 A.2d at 237. As appellants contend, the CPPA authorizes consumers aggrieved by prohibited trade practices to bring private civil actions in Superior Court for treble damages and other relief, see D.C.Code § 28–3905(k)(1),

nonetheless, this court concludes that the trial court was correct in ruling as a matter of law that appellants' misrepresentation claims cannot be pursued under the CPPA because those claims (1) seek damages for personal injury of a tortious nature and (2) arise in the context of landlord-tenant relations. *See Childs*, 882 A.2d at 237.

In 1983, when appellants' misrepresentation cause of action arose, § 28–3905(k)(1) provided as follows:

> Any consumer who suffers any damage as a result of the use or employment by any person of a trade practice in violation of a law of the District of Columbia *within the jurisdiction of the Department* [of Consumer and Regulatory Affairs] may bring an action in the Superior Court of the District of Columbia to recover or obtain any of the following:
>
> (A) treble damages;
>
> (B) reasonable attorneys' fees;
>
> (C) punitive damages;
>
> (D) any other relief which the court deems proper.

D.C.Code § 28–3905(k)(1) (1981) (footnote omitted; emphasis added). As this court stated in *Childs*, "[w]e have construed the italicized language to mean that where the Act limits the jurisdiction of the Department of Consumer and Regulatory Affairs, 'the scope of the cause of action created by § 28–3905(k)(1) is similarly limited.'" 882 A.2d at 238 (*citing Diamond v. Davis*, 680 A.2d 364, 365–66 n. 2 (D.C.1996)).

In *Twin Towers Plaza Tenants Ass'n, Inc. v. Capitol Park Assocs., L.P.*, 894 A.2d 1113, 1121 (D.C.2006), this court held that

---

**19.** Moreover, the praecipe dismissing the 1996 action with prejudice is to be construed as constituting a stipulation within the meaning of Rule 41(a). *Burns v. Fincke*, 90 U.S.App. D.C. 381, 382, 197 F.2d 165, 166 (1952); *see also (Arthur) Williams*, 514 A.2d at 1179 (*citing I.A.M. Nat'l Pension Fund v. Industrial Gear Mfg. Co.*, 232 U.S.App. D.C. 418, 723 F.2d 944 (1983) ("Consent decrees generally are treated as final judgments on the merits and accorded *res judicata* effect.")).

the CPPA expressly forbids the Department of Consumer and Regulatory Affairs from applying the CPPA's administrative remedies to landlord-tenant relations. See D.C.Code § 28–3903(c)(2)(A)(2001).[20] Recently, this court held that prior to October 2000, a plaintiff could not pursue damages under the CPPA "for personal injury of a tortious nature." *Caulfield v. Stark,* 893 A.2d 970, 977 (D.C.2006) (*citing Childs,* 882 A.2d at 237 (tenant precluded from bringing suit for personal injury under CPPA against landlord accused of misrepresentation about presence of lead-based paint in apartment)); see also D.C.Code § 28–3903(c)(1) (2001). The Parkers' claim arose before § 28–3905(k)(1) was amended in October 2000 [21] to permit actions for "damages for personal injury of a tortious nature." *Caulfield,* 893 A.2d at 976. That amendment was not retroactive. *Id.* at 977; *Childs,* 882 A.2d at 238. As a result, the trial court did not err in denying the Parkers' claim for damages under the CPPA because the transaction arose in a landlord-tenant relationship and because they seek damages for personal injuries of a tortious nature.

### D. Loss of Services of a Minor Child

Finally, on the Parkers' loss of services of a minor claim, the trial court ruled that "the law of the District of Columbia squarely prohibits any cause of action for loss of 'services' of a minor child." *District of Columbia v. Howell,* 607 A.2d 501, 506 (D.C.1992); *see also District of Columbia v. Hawkins,* 782 A.2d 293, 303 (D.C. 2001). The Parkers argue that the District of Columbia at common law recognizes the loss of "services" of a minor child, *i.e.,* "the financial benefits of a child's assistance in the household;" however, they cite no case law in the District of Columbia that supports that claim. Therefore, the trial court did not err in granting summary judgment in favor of the Martins on the loss of services of a minor child claim.

### III.

For the foregoing reasons, we reverse, in part, the trial court's award of summary judgment in favor of Queen and the Martins and remand the case for further proceedings consistent with this opinion. We agree with the trial court that the Parkers' claims against Queen were barred by *res judicata* based on the dismissal with prejudice of the 1996 action. We also agree with the trial court that the Parkers' consumer protection claims are not authorized by the Consumer Protection Procedures

---

**20.** D.C.Code § 28–3903(c)(2) states, in relevant part:

The Department may not:
(1) order damages for personal injury of a tortious nature;
(2) apply the provisions of section 28–3905 to:
(A) landlord-tenant relations; . . . .

**21.** The subsection now reads as follows:

A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia and may recover or obtain the following remedies:
(A) treble damages, or $1,500 per violation, whichever is greater, payable to the consumer;
(B) reasonable attorney's fees;
(C) punitive damages;
(D) an injunction against the use of the unlawful trade practice;
(E) in representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice; or
(F) any other relief which the court deems proper.
D.C.Code § 28–3905(k)(1) (2001).

Act, both because that CPPA is inapplicable to landlord-tenant relations and because appellants are seeking damages for personal injuries of a tortious nature.[22] Finally, we also agree with the trial court that the claim for loss of services of a minor child does not lie.

*So ordered.*

---

**22.** Appellants failed to argue that the trial court erred with respect to its ruling on punitive damages, thus, this court treats that claim as abandoned.