**Lloyd FINCH, et al., Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.[1]**

**No. 05–CV–438.**

District of Columbia Court of Appeals.

Submitted Jan. 17, 2006.

Decided March 16, 2006.

---

1. We originally docketed this appeal as *Lloyd Finch, et al. v. District of Columbia Metropolitan Police Department,* the caption it bore when the complaint was filed in the Superior Court. Appellee points out that the Superior Court granted its motion to substitute the District of Columbia as the defendant. We have amended the caption of the appeal accordingly.

Harold M. Vaught was on the brief for appellants.

Robert J. Spagnoletti, Attorney General for the District of Columbia, and Edward E. Schwab, Deputy Attorney General, and Mary T. Connelly, Assistant Attorney General, were on the brief, for appellee.

Before REID and FISHER, Associate Judges, and PRYOR, Senior Judge.

FISHER, Associate Judge:

Appellant Lloyd Finch is a former officer of the Metropolitan Police Department ("MPD") who was removed for misconduct on December 13, 2004.[2] On November 22, 2004, he and the Fraternal Order of Police Labor Committee ("FOP") commenced this pre-emptive action for injunctive and declaratory relief, asserting that disciplinary action was barred by a statute of limitations that became effective on September 30, 2004. The Superior Court rejected that argument,[3] and so do we.

From 1998 until the latter part of 2004 there was no time limit for initiating corrective or adverse action against employees of MPD or the Fire and Emergency Medical Services Department. Concerned about undue delay in resolving disciplinary matters, the Council of the District of Columbia enacted Title V, Section 502, of the Omnibus Public Safety Agency Reform Amendment Act of 2004, D.C.Code § 5–1031 (2005 Supp.), which provides:

> (a) Except as provided in subsection (b) of this section, no corrective or adverse action against any sworn member or civilian employee of the Fire and Emergency Medical Services Department or the Metropolitan Police Department shall be commenced more than 90 days, not including Saturdays, Sundays, or legal holidays, after the date that the Fire and Emergency Medical Services Department or the Metropolitan Police Department knew or should have known of the act or occurrence allegedly constituting cause.

> (b) If the act or occurrence allegedly constituting cause is the subject of a criminal investigation by the Metropolitan Police Department, the Office of the United States Attorney for the District of Columbia, or the Office of Corporation Counsel, or an investigation by the Office of Police Complaints, the 90–day period for commencing a corrective or adverse action under subsection (a) of this section shall be tolled until the conclusion of the investigation.

MPD initiated disciplinary action against appellant Finch on October 6, 2004. The parties agree on the essential facts—that MPD had known of the basis for the discipline for more than ninety days before that date, but they disagree about the legal impact of the newly-enacted statute of limitations. The District of Columbia cites the general presumption against retroactive legislation. *See generally Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Childs v.*

---

**2.** MPD concluded that Finch had engaged in unauthorized outside employment in violation of general orders and thereafter lied to MPD investigators.

**3.** The Superior Court granted the District's motion for summary judgment, relying principally on our decision in *Owens–Corning Fiberglas Corp. v. Henkel*, 689 A.2d 1224 (D.C. 1997).

*Purll*, 882 A.2d 227, 238 (D.C.2005). Appellants maintain that they are not seeking retroactive application of the statute, but simply are asking that the ninety-day limit be applied prospectively to disciplinary action commenced after the effective date of the legislation. As we understand their argument, appellants would not seek to bar disciplinary action commenced before September 30, 2004, even if MPD had known of the basis for that action for more than ninety days before initiating it. By arguing that the disciplinary action against appellant Finch (commenced on October 6, 2004) is barred, however, they obviously maintain that most of the ninety-day period had already run before the statute became effective on September 30.

Neither the statute nor its legislative history explicitly addresses the question of whether or how it applies to grounds for discipline known to MPD prior to the statute's effective date.[4] The Council could have expressed an intention to clear out the backlog of pending disciplinary investigations by applying the statute to grounds for discipline already known. On the other hand, it might have specified that the new statute of limitations would apply only to conduct occurring after the effective date of the statute.[5] It did neither.

 For purposes of resolving this appeal, we will assume that the Council intended the statute to apply to situations where MPD knew about grounds for discipline but had not commenced disciplinary action as of September 30th. Given the normal rules for implementing a new statute of limitations, however, it would take a very clear expression of legislative intent to convince us that the Council meant to bar the disciplinary action against appellant Finch. Where private causes of action are concerned, there must be a "grace period" for adjusting to a new statute of limitations. "The Constitution ... requires that statutes of limitations must 'allow a reasonable time after they take effect for the commencement of suits upon existing causes of action.'" *Block v. North Dakota*, 461 U.S. 273, 286 n. 23, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) (quoting *Texaco v. Short*, 454 U.S. 516, 527 n. 21, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982)). *See Owens–Corning Fiberglas Corp., supra* note 3, 689 A.2d at 1234. Although we suppose the Constitution would not limit the government's ability to extinguish its own cause of action peremptorily, we see no indication that the Council meant to do so here. We therefore conclude that the legislature meant to allow a reasonable time for adapting to the new time limit. This action, begun less than a week after the statute became effective, clearly was commenced within a reasonable time.

An analogous situation arose several years ago when Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996). Prior to that time there had been no time limit within which federal prisoners were required to file motions under 28 U.S.C. § 2255 attacking their convictions. Congress imposed a one-year period of limitation, *see* 28 U.S.C. § 2255, ¶ 6, and questions arose about how the statute applied to criminal convictions that had become final more than one year before the effec-

---

4. We refer only to MPD because it was the public safety agency involved in this case. As the plain language of the statute quoted above reveals, however, it also applies to the Fire and Emergency Medical Services Department.

5. For example, *Burke v. Hamilton Beach Div., Scovill Mfg. Co.*, 424 A.2d 145, 148 (Me.1981), quotes a Maine statute which specified that "[t]his Act ... shall not be construed to affect any transaction occurring prior to the effective date of this Act."

tive date of the amendment. The federal courts of appeals uniformly held that such prisoners would have a reasonable time after the effective date of the amendment to file their § 2255 motions. *See, e.g., United States v. Cicero,* 341 U.S.App. D.C. 439, 442, 214 F.3d 199, 202 (2000), and cases cited therein. As the United States Court of Appeals for the Tenth Circuit explained, "application of the new time period to [the prisoner's] § 2255 motion without first affording him a reasonable time to bring his claim [would be] impermissibly retroactive." *United States v. Simmonds,* 111 F.3d 737, 745–46 (10th Cir. 1997).

In this case the legislature has not provided a "grace period" for adjusting to the new statute of limitations. The same was true when Congress amended 28 U.S.C. § 2255, so the federal courts were required to prescribe one. They concluded that the time limit imposed by the AEDPA was "short enough that the 'reasonable time' after [the effective date of the AEDPA] and the one-year statutory period coalesce[d]." *Lindh v. Murphy,* 96 F.3d 856, 866 (7th Cir.1996) (en banc), *rev'd on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). *See Cicero, supra,* 341 U.S.App. D.C. at 442, 214 F.3d at 202

(noting the "unanimity of view" that a one-year grace period was appropriate). We similarly conclude that a grace period of at least ninety days would be reasonable in this situation. Because MPD commenced disciplinary action well within that period, discipline could not be precluded by the newly-enacted statute of limitations.[6]

Our discussion thus far has assumed that the legislature intended the new period of limitation to apply to grounds for discipline already known to MPD. The District of Columbia seems to argue, however, that the general presumption against retroactivity of legislation means that no time limit whatsoever applies to grounds for discipline known to MPD prior to September 30, 2004. We need not resolve this issue of legislative intent in this case because it is clear that the action against Mr. Finch is timely in any event. It is also possible that the District could convince us that a grace period of more than ninety days is required. We leave those questions for another day when we are faced with disciplinary action commenced more than ninety days after September 30, 2004, based on conduct known to MPD prior to that date.[7]

---

6. The FOP purports to represent additional, unnamed members of MPD who "were proposed for disciplinary removal actions" on or after September 30, 2004. The complaint does not allege any of the facts surrounding the efforts to discipline these bargaining unit members. However, because the complaint was filed on November 22, 2004, disciplinary action obviously was commenced fewer than ninety days after September 30.

7. Citing the Comprehensive Merit Personnel Act ("CMPA"), D.C.Code § 1–601.01, *et seq.,* the District argues that appellant Finch did not exhaust his administrative remedies by appealing to the Office of Employee Appeals. *See* D.C.Code § 1–616.52. It therefore asserts that the Superior Court lacked jurisdiction and that we lack jurisdiction as well. The

District does not explain how appellant would have pursued that administrative appeal; at the time he filed his complaint for declaratory and injunctive relief, Finch had not yet been removed from his position. In any event, we previously have rejected a similar argument by the District that an appellant's failure to exhaust his administrative remedies under the CMPA deprived the trial court of jurisdiction. *Burton v. District of Columbia,* 835 A.2d 1076, 1079 (D.C.2003). We explained that such rules of judicial administration could be waived or forfeited. *Id. See Eberhart v. United States,* 546 U.S. ——, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005). The District acknowledges that it did not raise this argument in the trial court, and we therefore do not consider it here.

For the reasons discussed, the judgment of the Superior Court is hereby

*Affirmed.*